**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

SWISHER INTERNATIONAL, INC.

        Plaintiff,

vs.                                                Case No. 3:08-cv-1179-J-32HTS

ISA CHICAGO WHOLESALE, INC., a
foreign corporation, and MUHAMMAD
INAYAT, an individual,

        Defendants.

## **ORDER**[1]

Before the Court are Defendant Muhammad Inayat's Motion To Dismiss Plaintiff's Complaint (Doc. 10) and Defendants' Joint Motion To Dismiss, Or In The Alternative, To Transfer Venue. (Doc. 11.) The Court considers the motions and plaintiff's responses and exhibits thereto. (Docs. 12, 13, 14.)

**I.**    **Background**

This is a suit for money allegedly owed on a contract, account stated, and breach of a guaranty. Plaintiff Swisher International, Inc. ("Swisher") alleges that it and defendant ISA Chicago Wholesale, Inc. ("ISA") entered into a Customer Credit

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it is intended to decide the motions addressed herein and is not intended for official publication or to serve as precedent.

Application Agreement ("Credit Agreement") in January 2006 in which ISA "agreed that in exchange for an extension of credit by Swisher that it would pay invoices submitted by Swisher for materials Swisher provided to ISA Chicago." (Doc. 2 at 2 (Complaint ¶ 5).) Defendant Muhammad Inayat ("Inayat"), president of ISA, entered into a personal guaranty of the Credit Agreement "[i]n order to induce [Swisher] . . . to extend credit . . . . " (Doc. 12-2 at 4, 5.)[2] The Credit Agreement contains a forum selection and choice of law clause which provides:

> Any contractual disagreement between Swisher and Applicant shall be governed by the laws of the State of Florida and any legal disputes arising out of this Agreement shall be resolved in Jacksonville, Florida.

(Doc. 12-2 at 4.) The Guaranty has a choice of law clause:

> This Guaranty shall be covered and controlled by the laws of the State of Florida.

(Id. at 5.) Swisher alleges that ISA owes Swisher $498,870.56 on the Credit Agreement for tobacco products sent to ISA for distribution, plus interest, attorneys' fees and costs (Counts I and II), and that Inayat as guarantor, is liable for all sums now due under the Credit Agreement (Count III). (Doc. 2.)

Swisher's complaint, filed in state court on November 5, 2008, alleges that Swisher is a foreign corporation with its principal place of business in Jacksonville,

---

[2] Although the Guaranty's "witness" signature line remains empty and it is undated, the parties do not dispute the existence of a valid Guaranty agreement.

2

Florida; "ISA Chicago is a foreign corporation that executed a contract requiring performance in the State of Florida"; and "Inayat is an individual that executed a contract requiring performance in the State of Florida." (Compl. ¶¶ 2-4.)

Defendants removed the action from state court based upon diversity of citizenship, 28 U.S.C. § 1332, 1441, alleging that defendants ISA and Inayat are Illinois citizens. (Doc. 1 at 3.) In their joint motion to dismiss or in the alternative to transfer venue pursuant to 28 U.S.C. § 1404(a), defendants ISA and Inayat ask the Court to either dismiss or transfer this action to the United States District Court for the Northern District of Illinois where two other cases are pending with "an overlap of facts and legal issues," one of which was filed four months before Swisher's suit here.[3] Alternatively, defendants seek a stay of this action in order to allow the Illinois court to decide the issue of venue. (Doc. 11.) Further, defendants contend that the case should be transferred for "the convenience of the parties, the witnesses and in the interest of justice." (Id. at 2.)

In the first Illinois case, *Chicago I*, filed on July 17, 2008, ISA alleges a breach of an oral agreement with Swisher which ISA says entitles it to a discount of $262,070

---

[3] The two cases pending in Illinois are: ISA Chicago Wholesale, Inc. v. Swisher International, Inc., No. 1:08-cv-03461 (N. D. Ill.) ("*Chicago I*"), filed June 17, 2008, and ISA Chicago Wholesale, Inc. v. Swisher International, Inc., No. 1:08-cv-06538 (N.D. Ill.) ("*Chicago II*"), filed November 13, 2008. (Docs. 11 at 1, 12-5, 12-6.) Inasmuch as both parties refer to and/or have filed pleadings from the two Chicago lawsuits, the Court takes judicial notice of the Chicago lawsuits. Fed. R. Evid. 201.

3

for tobacco products purchased from Swisher in 2007. (Docs. 11 at 3; 12 at 2; 12-5.) Swisher answered the complaint on August 19, 2008, generally denying ISA's allegation that venue was proper in Illinois (Doc. 12-3 at 2), and on December 18, 2008, filed a motion to dismiss *Chicago I* for improper venue or to transfer to this Court. (Docs. 12 at 2; 12-4.)

The second Illinois lawsuit, *Chicago II*, filed by ISA on November 11, 2008, after the commencement of the instant action, alleges unlawful price discrimination in violation of the Robinson Patman Act, 15 U.S.C. § 13(a), against Swisher. (Docs. 11 at 4; 12-6.) Swisher has moved to dismiss *Chicago II* for improper venue, or to transfer to this Court.

On March 20, 2009, this Court conducted a telephonic hearing on defendants' pending motions to dismiss or to transfer. (Doc. 25.) After hearing argument of counsel, the Court entered an Order staying this case, pursuant to the first-filed rule, pending a decision on venue by the Illinois District Court in the *Chicago I* case. (Doc. 26.) The case was administratively closed pending a motion to reopen filed by any party.

On April 7, 2009, the District Court for the Northern District of Illinois granted Swisher's motion to dismiss the *Chicago I* lawsuit pursuant to Fed. R. Civ. P. 12(b)(3) for improper venue based upon the forum selection clause between the parties. (Doc. 27-2.) In doing so, that Court determined that the forum selection clause was

mandatory, and that it applied to the parties' dispute over alleged "credit memos" for trade show discounts. The Court dismissed the *Chicago I* case without prejudice. (Doc. 27-2.)

Following entry of the Order in *Chicago I*, the Court granted Swisher's unopposed motion to reopen this case. (Docs. 27, 28.)

## II. Discussion

### A. Transfer Of Action To Northern District Of Illinois

Defendants request that the Court transfer venue in this case to the U.S. District Court for the Northern District of Illinois,[4] citing to the two pending lawsuits in that Illinois district, and the fact that "[t]he product for which Swisher claims nonpayment in this matter was shipped to ISA's office in Chicago," its company witnesses and documents are located in Chicago, and a third party witness "resides in the Indiana area." (Doc. 11 at 7-8.)[5]

---

[4] Defendants' motion to dismiss the lawsuit for improper venue is precluded by the fact that they removed this action from state court pursuant to 28 U.S.C. § 1441. "'[T]he only proper way [for a removing defendant] to assert a challenge to venue, without flouting the venue provisions of 28 U.S.C. § 1441, is to do so pursuant to 28 U.S.C. § 1404(a) . . . .'" seeking transfer for the convenience of the parties. Hollis v. Florida State University, 259 F.3d 1295, 1299-1300 (11th Cir. 2001)(citation omitted). Further, defendant ISA has not defaulted as Swisher suggests (without any citation to any authority in support of that proposition). (See Doc. 12 at 2, 4.)

[5] Since the filing of defendants' motion, the court in *Chicago I* has dismissed that case without prejudice, (Doc. 27-2); only the *Chicago II* price discrimination case remains pending in that forum. Nevertheless, defendants still ask the Court to decide

"Section 1404(a)[6] is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)(citation omitted). "Under Section 1404(a), the court should consider 'the convenience of parties and witnesses' and 'the interest of justice,'[7] with a choice of forum clause 'a *significant* factor that figures *centrally* in the district court's calculus. . . . . 'Thus, while other factors might "conceivably" militate against a transfer . . . the venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors.'" P & S Business Machines, Inc. v. Canon USA, Inc., 331 F.3d 804, 807 (11th Cir. 2003)(quoting Stewart Organization, Inc., 487 U.S.

---

their motion to transfer. (Doc. 29.)

[6] Consideration of whether to enforce a forum selection clause in a diversity jurisdiction case is governed by federal law under 28 U.S.C. § 1404(a). Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 28-29 (1988); P & S Business Machines, Inc. v. Canon USA, Inc., 331 F.3d 804, 807 (11th Cir. 2003). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

[7] The Court considers the following factors when ruling on a motion to transfer pursuant to 28 U.S.C. § 1404(a): "(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

at 29 and In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989)(emphasis in original)). A valid forum selection clause should be given controlling weight and be enforced in all but the most "exceptional" cases. Stewart Organization, Inc., 487 U.S. at 33 (Kennedy, J., concurring); In re Ricoh Corp., 870 F.2d at 574. "A forum selection clause is reasonable if it neither causes unfair inconvenience to third parties nor implicates an interest of justice." Contraves Inc. v. McDonnell Douglas Corp., 889 F. Supp. 470, 472 (M.D. Fla. 1995).

In the absence of any allegation or evidence to the contrary, the Court finds that the forum selection clause in the Credit Agreement is valid and enforceable. See In re Ricoh Corp., 870 F.2d at 573-74. Additionally, the parties do not dispute here that as written, the forum selection clause in the Credit Agreement is mandatory. See Florida Polk County v. Prison Health Services, Inc., 170 F.3d 1081, 1083 n.8 (11th Cir. 1999).[8]

The parties' forum selection clause was freely negotiated by representatives of two substantial businesses as part of the business transaction between them. It was an item bargained for in the event of the very type of litigation presented here. In this context, "[a] commercial transaction may result in the selection of an inconvenient

---

[8] Furthermore, the District Court for the Northern District of Illinois held that the parties' forum selection clause is mandatory, (Doc. 27-2 at 6) which collaterally estops defendants from contending otherwise. See Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1359 (11th Cir, 1998).

7

forum for litigation for the dispositive reason that the agreed forum was the only one in which the parties could concur and 'but for' that selection the balance of the transaction either would not have occurred or the terms would have changed." Contraves, Inc. 889 F. Supp. at 474; accord Stewart Organization, Inc., 487 U.S. at 33 ("enforcement of valid forum-selection clause, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system")(Kennedy, J., concurring). The parties not only agreed to a forum in Jacksonville, Florida, but also to the application of Florida law in any dispute arising out of the Credit Agreement. See Len Tran, Inc. v. Cal-Sungold, Inc., No. 808-CV-14-T-23MAP, 2008 WL 2025287 at *3 (M.D. Fla. May 9, 2008)(quoting Kafack v. Primerica Life Ins. Co., 934 F. Supp. 3, 8 (D.D.C. 1996))("'[t]he interests of justice are best served by having a case decided by the federal court in the state whose laws govern the interests at stake'"). The Florida forum is acceptable in that Swisher's principal place of business is in Jacksonville, and both defendants are subject to the personal jurisdiction of this Court. See supra. This suit does not present "the type of 'exceptional' situation in which judicial enforcement of a contractual choice of forum clause would be improper." In re Ricoh Corp., 870 F.2d at 574 (citation omitted).

Accordingly, defendants' motion to transfer pursuant to 28 U.S.C. § 1404(a) is due to be denied.

### B. The Mandatory Forum Selection Clause Between Swisher and ISA Is Enforceable Against Defendant Inayat

In his motion to dismiss based upon lack of personal jurisdiction, Inayat argues that the Guaranty, which he executed in his personal capacity, provides the only basis for personal jurisdiction, and that the Credit Agreement's forum selection clause does not apply to him.

"'In order to bind a non-party to a forum selection clause, the party must be "closely related" to the dispute such that it becomes "foreseeable" that it will be bound.'" Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1299 (11th Cir. 1998)(quoting Hugel v. Corp. of Lloyd's, 999 F.2d 206, 209 (7th Cir. 1993)). As Guarantor of the Credit Agreement, to which the Guaranty was attached, it was "foreseeable" to Inayat that he would be bound by the Credit Agreement's forum selection clause. Swisher's claim against Inayat personally is inextricably intertwined with those claims asserted against ISA; a claim on the Guaranty is so "closely related" to the gravamen of this dispute arising out of the Credit Agreement containing the forum selection clause that it is "foreseeable" that all claims would travel together. McNair, 279 F. Supp.2 at 1307-08. Accord Infectious Disease Solutions, PC v. Synamed, No. 1:07-CV-0211-WSD, 2007 WL 2454093, at *2 (N.D. Ga. Aug. 23, 2007)(transferring case pursuant to forum selection clauses which were not made unenforceable by plaintiff's addition of company officer as a defendant inasmuch as individual's "only relation to [plaintiff] is through the contracts" and individual was

9

"closely related to the dispute and the contracts"); Vickers v. Wells, No. Civ.A. 105CV0930RWS, 2006 WL 89858, at *3-4 (N.D. Ga. Jan. 11, 2006)(finding that defendant, as president of the company that entered into the employment agreement with plaintiff, was "sufficiently 'closely related' to the contract and to this dispute" such that he was "plainly entitled to enjoy the benefits of the forum selection clause"); Detroit Coke Corp. v. NKK Chemical USA, Inc., 794 F. Supp. 214, 217 n.2 (E.D. Mich. 1992)(rejecting plaintiff's argument that forum selection clause should be disregarded because one of the defendants was not a party to the agreement because its "material involvement in the transactions at issue in this suit as alleged in Plaintiff's Complaint is expressly referenced throughout the Agreement").

### C. Personal Jurisdiction Over Defendant Inayat

Defendant Inayat moves to dismiss the complaint brought against him alleging breach of the Guaranty for lack of personal jurisdiction. (Doc. 10.) "A federal district court sitting in diversity may exercise personal jurisdiction to the extent authorized by the law of the state in which it sits and to the extent allowed under the Constitution." Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino, 447 F.3d 1357, 1360 (11th Cir. 2006). To establish personal jurisdiction over a nonresident defendant, Swisher must satisfy both Florida's long-arm statute, and the constitutional "minimum contacts" due process requirement. Id. The applicable long-arm statute is Section 48.193, Florida Statues. Even if the long-arm statute provides a basis for personal

jurisdiction, due process requires consideration of (1) the defendant's purposeful contact with the forum state and (2) fair play and substantial justice. Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990)(citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

Swisher has the burden of establishing a prima facie case of personal jurisdiction. Stubbs, 447 F.3d at 1360. The facts alleged in the complaint are accepted as true, to the extent that they are not controverted by Inayat. Ahern v. Pacific Gulf Marine, Inc., 8:06-CV-2068-T-27MSS, 2008 WL 706501, at *2 (M.D. Fla. March 14, 2008). If "the defendant submits affidavits contrary to the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." Stubbs, 447 F.3d at 1360. However, "[i]n the face of a meritorious challenge supported by affidavits, the plaintiff has to prove jurisdiction over the person by opposing affidavits, testimony or documents." Holton v. Prosperity Bank of St. Augustine, 602 So.2d 659, 662 (Fla. 5th DCA 1992).

Swisher alleges in its complaint that "Inayat is an individual that executed a contract requiring performance in the State of Florida," that "Inayat executed a personal guarantee as part of the same instrument [the Credit Agreement], personally guaranteeing repayment of all credit extended by Swisher to ISA Chicago" (Doc. 2 at

11

2 (Compl. ¶¶ 4, 5; see also ¶¶ 23, 25, 26), and that the Credit Agreement, signed by Inayat as president of ISA, "provided that any litigation to enforce the terms thereof shall be maintained in Jacksonville, Duval County, Florida." (Id. at ¶¶ 6, 18; Doc. 1 at 7.)

Inayat presents evidence by affidavit that he is an Illinois resident; that he executed the Credit Agreement as president of ISA and the Guaranty on his own behalf in Illinois; that he has never travelled to Florida in connection with ISA's business dealings with Swisher; and that ISA does not have and has never had, an office or agent in Florida. (Doc. 10 at 7.)

### 1. Florida's Long Arm Statute

Section 48.193(1) provides that "[a]ny person, whether or not a citizen or resident of this state," who does any of the acts enumerated is subject to the jurisdiction of Florida's courts. One of the enumerated acts is "[b]reaching a contract in this state by failing to perform acts required by the contract to be performed in this state." Fla. Stat. § 48.193(1)(g). In Florida, "[i]t is well settled that the legal presumption that a debt is to be paid at the creditor's place of business in the absence of an express designation of the place of payment is sufficient to satisfy the language in 48.193(1)(g) that refers to contractual acts 'required' to be performed in Florida." Vacation Ventures, Inc. v. Holiday Promotions, Inc., 687 So.2d 286, 289 (Fla. 5th DCA 1997); see also FLA Consulting, Inc. v. Rymax Corp., No. 6:07-cv-1265-Orl-

12

31KRS, 2007 WL 2714100, at *2 (M.D. Fla. Sept. 17, 2007)(when "'no place of payment was specifically designated, the effect of the contract was that the place of payment was the Florida office of plaintiff'"(quoting Armaly v. Practice Management Assocs., Inc., 533 So.2d 920, 921 (Fla. 2d DCA 1988)). Additionally, Swisher has alleged that the Guaranty signed by Inayat "require[s] performance in the State of Florida" (Compl. ¶ 3), an allegation which must be taken as true inasmuch as Inayat has not adduced any controverting evidence.

Inayat is subject to the state's jurisdiction under Florida's long-arm statute for allegedly breaching a contract in Florida by failing to pay, an act required to be performed in Florida. Fla. Stat. § 48.193(1)(g). See Telemedia Communications, Inc. v. St. Francis Inv. Properties, L.P., No. 8:07-cv-1112-T-17-MAP, 2007 WL 4116052, at * 1 (M.D. Fla. Nov. 16, 2007); Aspsoft, Inc. v. WebClay, 983 So.2d 761, 766 (Fla. 5th DCA 2008); deMco Techs., Inc. v. C.S. Engineered Castings, Inc., 769 So.2d 1128, 1129-30 (Fla. 3d DCA 2000).

### 2. **Constitutional Due Process**

While the failure to make payment in Florida under the Guaranty "facially provides personal jurisdiction over [the guarantor] pursuant to section 48.193(1)(g), the mere failure to pay money in Florida, standing alone, is not sufficient to obtain jurisdiction consistent with due process over a nonresident defendant." Magic Pan Int'l, Inc. v. Colonial Promenade, 605 So.2d 563, 566 (Fla. 5th DCA 1992)(citing

13

Venetian Salami Co. v. Parthenais, 554 So.2d 499, 503 (Fla. 1989)); see also deMco Techs., Inc., 769 So.2d at 1130 (nonpayment of debt "without more" is insufficient to sustain personal jurisdiction in accord with constitutional due process requirements). Thus, Swisher must also satisfy the constitutional due process requirement of proving that Inayat has sufficient minimum contacts with Florida and that the assertion of personal jurisdiction would not offend the traditional notions of fair play and substantial justice, such that Inayat "should reasonably anticipate being haled into court" in Florida. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).[9] "In order for a non-resident defendant to reasonably anticipate such litigation in the forum state, 'it is essential in each case that there be some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" deMco Techs., Inc., 769 So.2d at 1131 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). "'[P]rior negotiations and contemplated future consequences, along with the

---

[9] There are two types of personal jurisdiction: general and specific. "Substantial or pervasive contacts in the forum state confers general jurisdiction upon that state's courts. . . . On the other hand, specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint." Christus St. Joseph's Health Systems v. Witt Biomedical Corp., 805 So.2d 1050, 1052 (Fla. 5th DCA 2002). As this case involves the exercise of specific jurisdiction, to demonstrate the requisite minimum contacts with Florida, Inayat's contact with Florida must: (1) be related to Swisher's cause of action or have given rise to it; (2) involve some act by which Inayat purposefully availed himself of the privilege of conducting activities within Florida; and (3) be such that Inayat should have reasonably anticipated being haled into court here. See Sloss Indus. Corp. v. Eurisol, 488 F.3d 922, 925 (11th Cir. 2007).

14

terms of the contract and the parties' actual course of dealing . . . must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.'" Id. at 1131 (quoting Burger King, 471 U.S. at 479). Specifically, "when the failure to pay a debt owed in this state, whether as primary obligor or guarantor, is accompanied by some other related substantial act in Florida that is purposefully directed toward the state or its residents, the exercise of personal jurisdiction over such nonresident defendants is proper." Id. While a contractual provision specifically providing for jurisdiction in Florida or for the application of Florida law are not sufficient by themselves to vest jurisdiction, such provisions are particular factors in favor of Florida personal jurisdiction over a party to a contract requiring defendant to pay plaintiff in Florida. Armaly, 533 So.2d at 922.

In Nelson v. Ameriquest Techs., Inc., 739 So.2d 161 (Fla. 3d DCA 1999), a Utah resident was subject to personal jurisdiction in Florida for alleged breach of a guaranty contained in a dealer agreement, based on six invoices, all of which were required to be paid in Florida. The dealer application and invoices contained an agreement that venue would be in Florida, and the Utah resident had ordered and purchased numerous items from the plaintiff in Florida. Guarantor's breach of the guaranty to be paid in Florida "coupled with the parties' agreement as to venue contained in the dealer application and invoices, fully supported the trial court's exercise of in personam jurisdiction over [the guarantor]." Nelson, 739 So.2d at 164.

Similarly, in Telemedia Communications, Inc., 2007 WL 4116052, at *2, a distribution agreement evidencing defendant's consent to Florida's governing law in combination with defendant's regular payments made to plaintiff in Florida satisfied constitutional due process for the assertion of personal jurisdiction. See also e.g. Autonation, Inc. v. Whitlock, 276 F. Supp.2d 1258, 1263-64 (S.D. Fla. 2003)(forum selection clause may be considered as a factor that weighs in favor of exercising personal jurisdiction over nonresident defendant where other grounds exist to exercise jurisdiction); Desai Patel Sharma, Ltd v. Don Bell Indus., Inc., 729 So.2d 453, 454 (Fla. 5th DCA 1999)

Here, the parties' Credit Agreement contemplated a future and involved relationship, with payment to be made in Florida to the plaintiff creditor Swisher. The evidence submitted reflects a course of dealing under which ISA had made payments under the Credit Agreement to Swisher since 2006, all guaranteed by Inayat, and that Swisher alleges an outstanding balance of $498,870.56, due to be paid in Florida, also guaranteed by Inayat. (Docs. 1 at 3; 14 at 2.) The Credit Agreement that Inayat guarantees includes a mandatory forum selection clause and choice of law provision directing that all litigation arising out of the Credit Agreement take place in Florida. Likewise, the Guaranty specifies it is to be governed by Florida law. In these circumstances, Inayat should have reasonably anticipated being haled into court in this state for any alleged breach of the Guaranty contained in the Credit Agreement.

Upon due consideration, it is hereby

**ORDERED**:

1. Defendant Muhammad Inayat's Motion To Dismiss Plaintiff's Complaint (Doc. 10) is **DENIED**.

2. Defendants' Joint Motion To Dismiss, Or In The Alternative, To Transfer Venue (Doc. 11) is **DENIED**.

3. Plaintiff, Swisher International, Inc.'s Motion For Summary Judgment (Doc. 17) and Defendants' Joint Motion For Discovery (Doc. 20) are **TERMINATED WITHOUT PREJUDICE**, and may be filed at a later date.

4. Defendants shall answer plaintiff's complaint by **June 15, 2009**.

5. The parties shall confer and file their updated Case Management Report by **June 15, 2009**.

**DONE AND ORDERED** at Jacksonville, Florida, this 19th day of May, 2009.

TIMOTHY J. CORRIGAN
United States District Judge

jl
Copies w/ attached CMR to:

Counsel of Record

17